Knud E. NYBY, Marianne E. Nyby and
Valparaiso Resource Development,
Inc., Appellants–Plaintiffs,

v.

WASTE MANAGEMENT, INC., and
Indiana Waste Systems, Inc.,
Appellees–Defendants.

No. 75A03–9801–CV–1.

Court of Appeals of Indiana.

March 21, 2000.

Donn H. Wray, Stewart & Irwin, India-
napolis, Indiana, George W. Pendygraft,
George W. Pendygraft, P.C., Fishers,
Indiana, Attorneys for Appellant.

Peter J. Rusthoven, Michael Rosiello, Michael A. Moffatt, Barnes & Thornburg, Indianapolis, Indiana, Steven A. Dodge, Dodge & Associates, Knox, Indiana, Attorneys for Appellee.

## OPINION

STATON, Judge

This appeal arises from a lawsuit brought by Knud and Marianne Nyby (referred to collectively hereinafter as the "Nybys") and Valparaiso Resource Development, Inc. ("VRD") (the Nybys and VRD are referred to collectively hereinafter as the "Plaintiffs") against Waste Management, Inc. ("WMI") and Indiana Waste Systems, Inc. ("IWS") (WMI and IWS are referred to collectively hereinafter as the "Defendants"). The Plaintiffs appeal several unfavorable rulings by the trial court. They raise five issues on appeal, which we restate as six:

I. Whether the trial court erred by granting partial summary judgment to the Defendants.

II. Whether the trial court abused its discretion by excluding certain evidence regarding the damages incurred by the Nybys.

III. Whether the trial court erred by refusing three of the Nybys' tendered instructions.

IV. Whether the trial court erred by denying the Plaintiffs' motion to amend their complaint to add a claim for declaratory relief.

V. Whether the trial court abused its discretion by striking the Nybys' expert witnesses as a discovery sanction.

VI. Whether the trial court erred by denying the Nybys' request for attorney's fees.

We affirm.

1. VRD's claims had been disposed of prior to trial as a result of the trial court's summary

In 1972, the Nybys leased forty acres of land ("the North 40") to WMI to be used as a sanitary landfill. (This lease is referred to hereinafter as the "1972 Lease"). In 1977, the Nybys leased an adjacent forty acres of land ("the South 40") to IWS, a subsidiary of WMI. (This lease is referred to hereinafter as the "1977 Lease"). The South 40 was also to be used by IWS as a sanitary landfill. Collectively, the property was known as the 49er Landfill.

WMI and IWS stopped accepting waste at the 49er Landfill in 1980. The Nybys, WMI, and IWS entered into an agreement in 1982 whereby WMI and IWS agreed to place additional cover materials on portions of the landfill, repair erosion damage, reseed the newly covered areas, and seek final closure of the landfill from state authorities. (This contract is referred to hereinafter as the "Cover Agreement").

In 1984, the Nybys sold to VRD approximately sixty-nine acres of the land that had been the 49er Landfill. In 1985, the Plaintiffs initiated the present lawsuit against the Defendants in which they raised breach of contract and tort claims. The trial court granted partial summary judgment to the Defendants. Following a trial on the remaining claims, the jury rendered a verdict in favor of the Nybys for $49,000, upon which the trial court entered judgment.[1] The Plaintiffs appeal.

## I.

### *Summary Judgment*

The Plaintiffs argue that the trial court erred by granting partial summary judgment in favor of the Defendants. In presenting their argument, the Plaintiffs cite a number of errors, both procedural and substantive, that the trial court made. We address the Plaintiffs' procedural arguments first.

judgment rulings.

In a footnote, the Plaintiffs raise an important point regarding the designation requirements of Ind. Trial Rule 56(C). The Plaintiffs observe that the Defendants first moved for summary judgment on May 20, 1991, less than five months after an amendment to T.R. 56(C) had taken effect requiring parties to designate to the court all evidentiary material on which they rely in support of or in opposition to a motion for summary judgment. The Plaintiffs initially suggest that because this requirement was so new this court should ignore it and review the trial court's summary judgment decision based upon pre-designation jurisprudence.

The designation requirement was an important change in summary judgment procedure. It "promote[s] the expeditious resolution of lawsuits and conserve[s] judicial resources" by relieving trial courts from the burden of searching the record when considering summary judgment motions. *Rosi v. Business Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993). More significantly, T.R. 56(H), also made effective in January of 1991, specifically prohibits appellate courts from reversing a grant of summary judgment "on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." T.R. 56(H). This rule compels us to adhere to the designation requirement. Accordingly, we decline the Plaintiffs' invitation to follow pre–1991 summary judgment procedure. *See Keating v. Burton,* 617 N.E.2d 588, 590–91 (Ind.Ct.App.1993), *trans. denied* (Court of Appeals refused to consider non-designated material in reviewing the grant of summary judgment that was entered on a motion filed on May 22, 1991).

Perhaps anticipating this conclusion, the Plaintiffs argue that we should reverse the grant of partial summary judgment because the Defendants failed to designate any evidence in support of their motion. However, our review of the record indicates that the Defendants did designate materials. Throughout the brief that accompanies their May 20, 1991 motion, the Defendants cite pleadings and discovery materials in support of their factual assertions. A designation need not take a particular form. It is sufficient so long as it informs the court regarding the *specific* material upon which the party relies in support of or in opposition to a summary judgment motion. *L.E. Services, Inc. v. State Lottery Comm'n,* 646 N.E.2d 334, 348 (Ind.Ct.App.1995), *trans. denied.* The designation may be made in a brief accompanying a motion for summary judgment. *Id.*

The next procedural issue raised by the Plaintiffs is the question of how this court should treat the trial court's October 10, 1995 Order on Issues to be Tried. The trial court first entered partial summary judgment in favor of the Defendants on December 30, 1991. As the case moved towards trial, however, the parties debated the scope of this order. After further briefing and argument, the trial court entered an order on October 10, 1995, which it entitled Order on Issues to be Tried. As a result of this 1995 order, VRD was precluded from presenting any of its claims at trial and the Nybys were limited to their breach of contract claims. The order also placed limits on the damages the Nybys could prove at trial.

On appeal, the parties debate whether the 1995 order expanded the 1991 summary judgment order, thereby granting the Defendants summary judgment on additional claims, or whether the 1995 order was a mere clarification of the 1991 order. Based upon our review of the two orders, we conclude that the trial court did, as a result of the 1995 order, grant summary judgment to the Defendants as to counts that were not specifically addressed in the 1991 order. The Plaintiffs contend that this was improper and that the 1995 order was tantamount to a sua sponte summary judgment, a practice dis-

couraged by our precedent. *See State ex rel. Van Buskirk v. Wayne Township*, 418 N.E.2d 234, 247 (Ind.Ct.App.1981) (courts should rarely enter summary judgment sua sponte on an issue upon which no party has moved for summary judgment).

■■ We disagree with the Plaintiffs' contention that the 1995 order was a sua sponte summary judgment. When the Defendants first moved for summary judgment in 1991, they sought summary judgment as to each of the Plaintiffs' claims. Thus, the Plaintiffs had notice that the Defendants were seeking summary judgment against both the Nybys and VRD with respect to all of their breach of contract and tort claims. The Plaintiffs had the opportunity to oppose the motion as to each of these issues via argument and the designation of evidence. By issuing the 1995 order that further limited the Plaintiffs' claims, the court effectively reconsidered its earlier denial of portions of the Defendants' motion in its 1991 order. A trial court is entitled to reconsider its previous denial of a summary judgment motion. *Fox v. Contract Beverage Packers, Inc.*, 398 N.E.2d 709, 713 (Ind.Ct.App. 1980), *trans. denied.*

Although it would have been preferable for the trial court to have specifically stated its intention to reconsider its summary judgment order, the Plaintiffs have not been prejudiced by the court's failure to do so. The Plaintiffs were given the opportunity to make argument and to designate evidence at the time the Defendants filed their 1991 motion. As it does not appear that either party designated additional evidence in the course of arguing the scope of the 1991 order, we will consider only the evidence designated by the parties in their original summary judgment briefs in deciding whether a genuine issue of material fact existed.

■ We now address the Plaintiffs' substantive claims. Pursuant to T.R. 56, summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* On appeal, however, a trial court's grant of summary judgment is "clothed with a presumption of validity." *Rosi*, 615 N.E.2d at 434 (quoting *Department of Revenue v. Caylor–Nickel Clinic*, 587 N.E.2d 1311, 1312–13 (Ind.1992)). The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Rosi*, 615 N.E.2d at 434. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

The Plaintiffs filed a multi-count complaint against the Defendants. In their complaint, both the Nybys and VRD asserted that the Defendants were liable to them under the following theories: (1) breach of the 1972 Lease, (2) breach of the 1977 Lease, (3) breach of the Cover Agreement, (4) private nuisance, (5) public nuisance, (6) trespass, (7) strict liability, (8) voluntary waste, (9) permissive waste, and (10) negligence.[2] The court granted sum-

---

**2.** The Plaintiffs' complaint is divided into fourteen counts, not ten. However, some of the counts do not state different theories of

liability. For instance, Count IV is titled Explicit Contractual Indemnity and is based on a provision in the 1972 Lease. As this count

mary judgment to the Defendants on all of the Nybys' claims except for the first three – breach of the 1972 Lease, breach of the 1977 Lease, and breach of the Cover Agreement. The court also limited the damages that the Nybys could prove and recover at trial to any reduction in the price they received from the sale of the land to VRD that resulted from the Defendants' breach of the leases or Cover Agreement. The trial court granted the Defendants summary judgment on all of VRD's claims. We address the Nybys' claims of error first.

The Nybys first contend that the trial court erred by limiting the damages they could prove and recover at trial. Specifically, the Nybys argue that the court's ruling eliminated their claims against the Defendants as holdover tenants under the 1972 Lease and the 1977 Lease. The Nybys allege that the Defendants placed hazardous waste on the property and placed waste in unpermitted areas. The Nybys contend that this fact, along with the fact that the Defendants stopped making lease payments in June 1978 and November 1981 under the 1972 Lease and the 1977 Lease, respectively, establishes that the Defendants are holdover tenants. They argue that the trial court's limitation on the damages they could receive did not permit them to recover under this theory.

▮ In making this argument, the Nybys cite one case, and it is cited only for the axiomatic proposition that "[t]he measure of damages in a breach of contract case is the loss actually suffered by the breach." *Sammons Communications v. Larco Cable Const.*, 691 N.E.2d 496, 498 (Ind.Ct.App.1998), *trans. denied.* The Nybys cite no authority pertaining to landlord-tenant law or to holdover tenancies. The Nybys do not cite provisions of the leases pertaining to holdover tenancies. The Nybys' argument on this point is not cogent. Therefore, we deem it waived.

Ind. Appellate Rule 8.3(A)(7); *Mitchell v. Stevenson*, 677 N.E.2d 551, 558 n. 3 (Ind. Ct.App.1997), *trans. denied.*

▮ Second, the Nybys contend that the trial court erred by granting summary judgment to the Defendants as· to all of their tort claims. The Nybys' claims against the Defendants included claims for public and private nuisance, trespass, strict liability, voluntary and permissive waste, and negligence. The Nybys cite ample authority for the proposition that a party's failure to properly perform under a contract may give rise to an action in both contract and tort. They then refer, without citation, to evidence that the Defendants acted wrongfully and unlawfully by receiving unpermitted hazardous waste and depositing waste in unpermitted areas. They list the different types of damage they incurred as a result of the Defendants' alleged wrongful and unlawful behavior. But nowhere do they provide argument as to how this evidence supports their claims of nuisance, trespass, strict liability, waste, and negligence. They cite no authority regarding these legal doctrines or their elements. Nor do they argue that the Defendants, in moving for summary judgment, failed to meet their burden of proof as to these claims, an argument that would be far more compelling than the one they have made. We will not make the Nybys' argument for them. The Nybys have not met their burden of establishing that the trial court erred. *See Rosi*, 615 N.E.2d at 434.

▮ Next, the Nybys argue that the trial court erred by making the following finding in its 1991 summary judgment order: "1. None of the leases between the parties nor the "agreement" require Defendants to control erosion, leachate or to maintain water monitoring wells after closure. 2. The Environmental Management Board of Indiana made a decision to

claims a specific remedy for breach of the 1972 Lease, the claim is contingent upon finding such a breach. We have consolidated the

Plaintiffs' fourteen claims into the ten substantive theories stated here.

provide ground water monitoring." Record at 452. The Nybys contend that the 1977 Lease implicitly required the Defendants to control erosion, leachate, or to maintain water monitoring wells. They cite a provision of the 1977 Lease that provides: "Lessee herein agrees that it shall during the term of this lease use the subject property for a sanitary landfill in accordance with present Federal, state and local regulations." Record at 1425. The Plaintiffs appear to argue that federal, state, or local regulations required the Defendants to control erosion, leachate, or to maintain water monitoring wells. However, they have not cited a single such regulation in their argument. Accordingly, we are unable to determine whether the challenged finding by the trial court is correct. The Nybys' argument is waived. App. R. 8.3(A)(7); *Mitchell*, 677 N.E.2d at 558 n. 3. The Nybys have failed to meet their burden on appeal of proving that the trial court erred by granting summary judgment to the Defendants.

■ We now turn to VRD's arguments. VRD first argues that the trial court erred by granting summary judgment to the Defendants on its negligence, trespass, and nuisance claims. VRD cites no Indiana cases regarding negligence, trespass, or nuisance. Instead, it refers to evidence indicating that the Defendants placed unpermitted hazardous waste in the landfill and waste in unpermitted areas of the landfill, and argues that this supports its claims of negligence, trespass, and nuisance. VRD also cites several out-of-jurisdiction cases, but makes no attempt to compare or contrast them with Indiana law. This argument is inadequate and is waived. *Id.*

■ Second, VRD argues that the trial court erred by granting summary judg-

ment on its claim of strict liability. VRD contends that the Defendants were engaged in an ultra-hazardous activity by placing hazardous liquid waste in the landfill. Once again, VRD's argument on this point is sparse and fails to delineate the elements that need be shown in order to sustain a claim of strict liability. VRD's argument on this point is inadequate. It is waived. *Id.*

■ Third, VRD contends that a statute that became effective during the pendency of this appeal provides it with a new cause of action and that it should be allowed to pursue this claim. This claim was not raised below and the trial court could not have granted summary judgment on it. Thus, we may not reverse the trial court's grant of summary judgment on this basis.

Finally, VRD argues that the trial court erred by granting summary judgment on its claims that the Defendants breached the 1972 Lease and the 1977 Lease. In support of its argument, VRD refers to paragraph 29 of the 1972 Lease and paragraph 15 of the 1977 Lease, both of which speak to the effect of the leases on successors and assigns. However, our review of the record reveals that these paragraphs were never specifically designated to the trial court.[3] Accordingly, we may not consider the existence of these paragraphs in order to create a genuine issue of material fact that would justify reversal of the trial court's grant of summary judgment. T.R. 56(H); *L.E. Services, Inc.*, 646 N.E.2d at 348. VRD's argument fails. VRD has failed to meet its burden on appeal of proving that the trial court erred by granting summary judgment to the Defendants.

## II.

### *Damage Evidence*

■ The Nybys argue that the trial court abused its discretion in excluding

---

**3.** VRD argued in its brief opposing summary judgment that it was an assign of the Nybys under the 1972 Lease and 1977 Lease. *See* Record at 370. However, VRD failed to designate paragraph 29 of the 1972 Lease and paragraph 15 of the 1977 Lease in support of

this assertion. The purpose of the designation requirement is to save the trial court from having to search the record to find support for a party's claim. *Rosi*, 615 N.E.2d at 434.

evidence at trial as to damages they incurred. It is within the trial court's discretion to admit or exclude evidence. *Zemco Mfg., Inc. v. Pecoraro,* 703 N.E.2d 1064, 1069 (Ind.Ct.App.1998), *trans. denied.* We will reverse a trial court's decision only for an abuse of that discretion, that is, only when the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances. *Id.*

■ The Nybys concede that many of the rulings that they challenge on appeal were consistent with the court's earlier summary judgment decisions, but argue that the court's rulings "compounded and perpetuated" the earlier errors. Appellants' Brief at 43. Because the court had eliminated many of the Nybys' claims through its summary judgment decisions, the Nybys' evidence tending to prove damages based upon those eliminated claims was not relevant. Those claims were simply not at issue during the trial. *See* Ind. Evidence Rule 401 (relevant evidence is that which has "any tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence"). Therefore, the trial court could not have abused its discretion in excluding this evidence.

■ Specifically, the Nybys contend that the trial court abused its discretion by excluding evidence regarding the overfilling of the landfill, the deposit of hazardous waste in the landfill, the landfill's present-day condition, the Defendants' failure to install groundwater monitoring wells, damage to adjacent real estate from the landfill, the Defendants' failure to pay rent as holdover tenants, the Defendants' violation of the Resource Conservation and Recovery Act, damage to the Nybys' reputation, costs of defending an enforcement action by the Indiana Department of Environmental Management, and the Defendants' financial condition. Most of this evidence was not relevant at trial since all of VRD's claims had been eliminated prior to trial and the Nybys' claims were limited to proving damages that resulted from the Defendants' breach of the leases and Cover Agreement, and then, only to the extent that the damages consisted of a reduction in the price the Nybys garnered from the sale of the land to VRD. As to the remaining evidence, the Nybys have not argued that it should have been admitted as consistent with the court's pre-trial damage ruling. The Nybys have not carried their burden of showing that the trial court abused its discretion by excluding the above evidence.

The Nybys also argue that the trial court abused its discretion by excluding evidence regarding the money they would have received from a methane recovery project that was thwarted as a result of the Defendants' breach. With respect to this evidence, the Nybys specifically argue that "[e]ven under the [trial court's] improperly narrow definition of damages, the Nybys should have been allowed to show the loss of value of the North 40 due to the breaches of the leases." Appellants' Brief at 48. Unfortunately, the Nybys fail to elaborate as to how this evidence would have been proper within the parameters of the trial court's pre-trial order regarding damages. The Nybys have not carried their burden.

### III.

*Instructions*

■ The Nybys contend that the trial court erred by refusing three instructions they tendered at trial. In determining whether it is error to refuse a tendered jury instruction, we consider: (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the instruction is covered by other instructions. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975, 979 (Ind.1993), *reh. denied.* The Nybys tendered instructions regarding continuing trespass, the definition of willful and wan-

ton misconduct, and punitive damages. Given that the trial court excluded evidence regarding these matters in accordance with its pre-trial limitation of the Nybys' damages, the court did not err by refusing the instructions since they were not supported by evidence in the record.

## IV.

### Amendment of Complaint

The Plaintiffs argue that the trial court abused its discretion by denying their motion to amend their complaint by adding a claim for declaratory relief. The Plaintiffs requested leave to amend their complaint on March 7, 1997, approximately twelve years after the complaint was filed and three weeks before trial. The Plaintiffs' requested amendment would have sought a declaration that the Defendants be held responsible for the costs of remediation that might be ordered in the future.

Ind. Trial Rule 15 governs the amendment of pleadings. T.R. 15(A) provides, in pertinent part: "... a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." Amendments to pleadings are to be liberally allowed. *Palacios v. Kline*, 566 N.E.2d 573, 575 (Ind.Ct.App.1991). However, the trial court retains broad discretion in granting or denying amendments to pleadings, and we will reverse only upon a showing of abuse of that discretion. *Id.* In determining whether an abuse has occurred, we look to a number of factors, which include "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Id.*

The Plaintiffs waited twelve years to assert a claim that could have been raised in their initial complaint. The Plaintiffs do not identify new evidence that was discovered during the course of the litigation that led them to seek this amendment. This court has refused to find an abuse of discretion where the trial court denied a motion to amend filed four years after the complaint and where there was no newly discovered evidence that justified the delay. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 142 (Ind.Ct. App.1997), *trans. denied.* Similarly, we conclude that the trial court could have reasonably found that the delay here was undue. The Plaintiffs have not shown that the trial court abused its discretion.

## V.

### Discovery Sanctions

The Nybys contend that the trial court abused its discretion by striking their expert witnesses as a sanction for failing to comply with the court's discovery orders. The appropriate sanctions for failure to comply with a trial court's order concerning discovery is a matter committed to the sound discretion of the trial court. *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind.1993). An abuse of that discretion occurs if the court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *Id.* Pursuant to Ind. Trial Rule 37(B)(2)(b), the trial court may prohibit a party from introducing matters in evidence where the party has failed to comply with the court's discovery orders.

The Nybys filed their witness list on September 8, 1995. The Defendants subsequently moved to bar the testimony of the Nybys' expert witnesses because the Nybys had failed to provide the Defendants with any information about their expert witnesses. On November 17, 1995, the Nybys filed a revised final witness list, which included the names of several expert witnesses. The Defendants again moved to bar the testimony of the Nybys' experts for failure to provide them with any information regarding the witnesses' expected

testimony. On February 16, 1996, the trial court denied the Defendants' motion. However, in doing so it stated:

> The Court being advised finds that said Motion shall be DENIED upon the condition that Plaintiff state in a written response to be served upon Defendants' counsel and with the Court within 15 days the subject matter upon which the listed experts Tim Boos, Richard Adomatis, and John Mundell will be expected to testify, the substance of the facts and opinions to which they are expected to testify, and a summary of the grounds for each opinion. The Plaintiffs shall be bound by the content of said responses. The Court further indicates that any further discovery violation will result in appropriate sanctions.

Record at 590. On March 1, 1996, the Nybys filed a document entitled Facts and Opinions of Plaintiffs' Expert Witnesses. The Defendants subsequently argued that this document did not comply with the court's February 16, 1996 discovery order, and moved that the court either dismiss the action or strike the expert witnesses as a discovery sanction. The trial court found that the Nybys' March 1, 1996 filing did not comply with its order and barred the Nybys' experts from testifying.

The Nybys contend that their March 1, 1996 response complied with the court's discovery order, and as such, that the trial court abused its discretion by barring the testimony of their experts. The discovery order required the Nybys to state the subject matter upon which the experts were expected to testify, the substance of the facts and opinions to which they were expected to testify, and a summary of the grounds for each opinion. The Nybys' filing failed to comply with these requirements.

For instance, the filing provided the following information regarding John Mundell:

> Dr. Mundell may offer opinions regarding the historical requirements of the Stream Pollution Control Board, the ISBOH, the IDEM, and the U.S. EPA for the construction, operation and closure of solid and hazardous waste landfills, and remedial costs associated with effecting proper closure of the 49'er Landfill, including the unpermitted portion of the Plaintiffs' property used as a landfill by Defendants. Dr. Mundell may also offer opinions regarding the historical development of the design, construction, operation and closure criteria for waste disposal facilities.
>
> Dr. Mundell has visited the 49'er Landfill site in Porter County, Indiana on at least one occasion, and upon his visit took detailed notes and photographs. Dr. Mundell has reviewed all documents listed on Plaintiffs First Amended Exhibit List, as well as all documents maintained in the ISBOH's file with regard to the 49'er Landfill. Dr. Mundell will review the aerial photographs and topographic surveys compiled in anticipation of litigation.
>
> Dr. Mundell will testify that the geology and hydrogeology of portions of the 49'er Landfill facility, specifically the unpermitted portion used by Defendants, was not suitable for use as a landfill, that inadequate protection of the groundwater was afforded by limited barrier soils beneath the Defendants' waste disposal areas, and that Defendants' [sic] did not adequately monitor during operation and/or post-closure to determine if there had been releases of environmental concern from the 49'er Landfill facility. In addition, Dr. Mundell has concluded that the landfill was not closed properly, that final closure configuration of the 49'er Landfill was not suitable to prevent excessive erosion of the cover and instability of the sideslopes, and that significant post-closure construction and maintenance is necessary to prevent continued erosion of the cover, minimize infiltration through the cover, and maintain encapsulation of the wastes disposed of within the 49'er Landfill facility.

Dr. Mundell will provide an evaluation of the impact on the 49'er Landfill of the unpermitted, illegal disposal of wastes by the Defendants.

Record at 591–92.

This statement failed to state adequately the facts and opinions upon which Dr. Mundell was expected to testify. For instance, it provides that "Dr. Mundell may offer opinions regarding the historical requirements of the Stream Pollution Control Board, the ISBOH, the IDEM, and the U.S. EPA for the construction, operation and closure of solid and hazardous waste landfills." Record at 591. However, it does not provide any indication of what his opinions regarding the historical requirements actually are.

The statement also fails to state a summary of the grounds for each opinion. The statement provides: "Dr. Mundell will testify that the geology and hydrogeology of portions of the 49'er Landfill facility, specifically the unpermitted portion used by Defendants, was not suitable for use as a landfill...." Record at 592. Nowhere does the statement provide a summary of the reasoning that underlies this opinion. Similar deficiencies permeate the above statement. Moreover, the same types of problems are present in the summary of the other two experts' expected testimony. The Nybys' filing did not comply with the trial court's discovery order. Therefore, the trial court did not abuse its discretion in barring the expert witnesses' testimony.

## VI.

### Attorney's Fees

The Nybys contend that the trial court erred by denying their request for attorney's fees. First, the Nybys contend that two provisions of the 1972 Lease give them the right to recover attorney's fees in this action. The 1972 Lease provides, in pertinent part:

21. INDEMNIFICATION OF LANDLORD. Tenant agrees to hold Landlord harmless from any and all claims for damage or injury arising out of or as a result of Tenant's use of the Leased Premises or of any breach or default of Tenant in the performance of any of its covenants hereunder....

. . .

27. LANDLORD'S RIGHT TO CURE DEFAULTS. If Tenant fails to duly and fully perform any of its obligations hereunder then, in addition to any other right and remedy given to Landlord at law or in equity, Landlord may perform such obligations and make such payment, and the cost of performing such obligations, including reasonable attorneys' fees, and the amount of such payment, all with interest at eight per cent (8%) per annum, shall be paid to Landlord by Tenant upon demand.

Record at 1420, 1423. The Nybys contend that the plain language of these provisions permit them to recover attorney's fees in this case.

Even if these contractual provisions required the award of attorney's fees for breach of the 1972 Lease, the trial court could not have awarded such fees because of the nature of the jury's verdict in this case. The jury entered a general verdict awarding the Nybys $49,000 in damages. Because the Nybys' claims at trial were limited to breach of contract, the jury's verdict indicates that it must have concluded that a breach occurred. However, there is simply no way to determine which of the three contracts at issue – the 1972 Lease, the 1977 Lease, and the Cover Agreement—were breached. It is possible that the verdict was based on breach of any one of the agreements or on all of them. Therefore, we cannot know whether the jury found a breach of the 1972 Lease. Thus, an award of attorney's fees under its provisions would require complete speculation.

The Nybys could have avoided this problem by pleading their request for attorney's fees and requesting that the jury be instructed to award attorney's fees if it determined that the 1972 Lease was breached. The trial court did not err by denying the Nybys' request.

Next, the Nybys argue that a statutory provision made effective after their request for attorney's fees was denied provides them with the right to recover attorney's fees. IND.CODE § 13–30–9–2 (1998) provides:

> A person may bring an environmental legal action against a person who caused or contributed to the release of a hazardous substance or petroleum into the surface or sub-surface soil or groundwater that poses a risk to human health and the environment to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

IND.CODE § 13–30–9–3 (1998) permits a court to award attorney's fees to a party involved in an environmental legal action. The Nybys contend that their action was an environmental legal action and that they are entitled to attorney's fees under the provisions of this law. The Nybys' action at trial was not one for environmental remediation; it was a breach of contract action. Accordingly, IC 13–30–9–3 has no application to this case.

Affirmed.

NAJAM, J., and ROBB, J., concur.