**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 26 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH A. KAPITAN**
Kopka, Pinkus, Dolin, & Eads, PC
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**ROSS HUBBELL**
Sarkisian & Fleming, P.C.
Portage, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEROY SHOAFF, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1401-CT-43 |
| | ) | |
| DENISA DEKKER, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable E. Duane Daugherty, Judge
Cause No. 45D04-0811-CT-270

**August 26, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Defendant Leroy Shoaff appeals the $386,000.00 judgment against him for his fault in a May 20, 2007 motor vehicle accident in which Appellee-Plaintiff Denisa A. Dekker was injured. Shoaff argues that the trial court abused its discretion in (1) admitting Dr. Ernest Talarico's expert testimony because Dekker failed to disclose the substance of that testimony during discovery; (2) instructing the jury regarding loss of full function of the body, claiming the instruction was not supported by the evidence; and (3) permitting Dekker's counsel to make a "Golden Rule" argument, claiming it deprived him of a fair trial. We find that Shoaff suffered no unfair surprise as a result of Dekker's discovery violation, that the instruction regarding loss of full function of the body was supported by the evidence, and that Dekker's closing argument was not, in all probability, the basis for the jury's verdict. The judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

On November 4, 2008, Dekker filed a negligence action against Shoaff, seeking damages for a knee injury she sustained in a May 20, 2007 motor vehicle accident in which Shoaff lost control of the vehicle he was driving and collided with Dekker's vehicle. On May 8, 2009, Shoaff served Dekker with expert witness interrogatories, including a request that Dekker "state with specificity the opinions and conclusions reached by [each expert]." Appellant's App. p. 11. Dekker responded on July 31, 2009, stating, "Plaintiff has not retained an expert witnesses [sic] at this time." Appellant's App. p. 19.

On December 9, 2011, Dekker supplemented her responses to Shoaff's expert witness interrogatories, identifying as expert witnesses Dr. David Robinson and Dr. Bruce

2

Thoma, Dekker's treating physicians, and Dr. Ernest Talarico, a clinical anatomist. In response to Shoaff's interrogatory for each expert's specific opinions and conclusions, Dekker stated, "Dr. Talarico has been retained to explain how mechanically the necrotic area of trauma to the right knee affects other component body parts and coordinates and may affect, interact or inhibit the function and movement of the knee and lower extremity." Appellant's App. p. 27.

Shoaff scheduled a deposition of Dr. Talarico for December 29, 2011. On December 10, 2011, Shoaff informed Dekker that her supplemental responses to Shoaff's expert witness interrogatories failed to disclose Dr. Talarico's opinions and conclusions. Shoaff further advised that, if Dr. Talarico's opinions and conclusions were not disclosed by December 15, 2011, Shoaff would cancel his deposition of Dr. Talarico and move to bar him from testifying at trial. Dekker replied on December 15, 2011, stating that she would supplement her responses the following day. Dekker, however, never submitted any additional supplemental responses, and, on December 19, 2011, Shoaff cancelled his deposition of Dr. Talarico.

On October 31, 2013, nearly two years after cancelling his deposition of Dr. Talarico, Shoaff filed a motion to bar Dr. Talarico from testifying at trial. That same day, the trial court held a final pretrial conference, during which it heard and denied Shoaff's motion. A jury trial was held on November 18, 19, and 20, 2013. During Dekker's case in chief, Dekker called Dr. Talarico as an expert witness, at which time Shoaff reasserted his motion to bar Dr. Talarico from testifying. Alternatively, Shoaff requested an opportunity to question Dr. Talarico outside the presence of the jury. The trial court denied

both requests.

Also during trial, Shoaff objected to a final jury instruction that stated, "A person is entitled to full function of their body and any loss of function in itself is compensable because of the effect on the quality and enjoyment of life which would not have been restricted but for the injury." Tr. p. 240. Additionally, Shoaff twice objected to a series of comments made by Dekker's counsel during closing argument. All of the above objections were overruled by the trial court. Following closing argument, Shoaff moved for a mistrial. This motion was also denied.

On November 20, 2013, the jury returned a verdict in favor of Dekker, assessing her damages at $400,000.00. The jury further found Dekker to be 3.5% at fault and Shoaff, 96.5% at fault. Accordingly, the trial court entered judgment against Shoaff in the amount of $386,000.00. On December 20, 2013, Shoaff filed a motion to correct error, which motion the trial court denied on December 27, 2013. Where necessary, additional facts with be provided below.

## DISCUSSION AND DECISION

Shoaff argues that the trial court abused its discretion in (1) admitting Dr. Talarico's expert testimony; (2) instructing the jury regarding loss of full function of the body; and (3) permitting Dekker's counsel to make a "Golden Rule" argument. "An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law." *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993).

### I. Expert Witness

4

Shoaff argues that the trial court abused its discretion in admitting Dr. Talarico's expert witness testimony because Dekker failed to disclose the substance of that testimony during discovery. Indiana Trial Rule 26(B) allows a party, through interrogatories, to "require any other party to identify each person whom the other party expects to call as an expert witness at trial … and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." T.R. 26(B)(4)(a)(i). Trial Rule 26(E) further requires a party seasonably to supplement his response with regard to the substance of an expert witness' expected testimony. T.R. 26(E)(1)(b). "If a party fails to conform to the requirements of T.R. 26(E) and does not supplement discovery responses concerning experts to be utilized at trial, the trial court can in its discretion, exclude the testimony of the witness." *P.T. Buntin*, *M.D., P.C. v. Becker*, 727 N.E.2d 734, 738 (Ind. Ct. App. 2000) (citing *Lucas v. Dorsey Corp.*, 609 N.E.2d 1191, 1196-97 (Ind. Ct. App. 1993)); T.R. 37(B)(2)(b).

As an initial matter, we find that Dekker indeed violated her duties to disclose and supplement discovery under Trial Rule 26. Neither Dekker's initial response to Shoaff's expert witness interrogatories nor her supplement thereto disclosed Dr. Talarico's opinions and conclusions as required. Dekker's statement that "Dr. Talarico has been retained to explain how mechanically the necrotic area of trauma to the right knee affects other component body parts and coordinates and may affect, interact or inhibit the function and movement of the knee and lower extremity" is inadequate. Appellant's App. p. 27. *See Nyby v. Waste Mgmt., Inc.*, 725 N.E.2d 905, 917 (Ind. Ct. App. 2000) (finding supplemental discovery response stating expert "'may offer opinions regarding [certain] historical

5

requirements…' d[id] not provide any indication of what his opinions regarding the historical requirements actually are").

Although we do not condone the disregard for the rules of discovery exhibited by Dekker, we cannot say that the trial court abused its discretion in permitting Dr. Talarico to testify. "Pretrial discovery is designed to promote justice and to prevent unfair surprise by allowing the defense adequate time to prepare its case." *Jacobs v. State*, 640 N.E.2d 61, 66 (Ind. Ct. App. 1994). "[A]s a general proposition, the proper remedy for a discovery violation is a continuance." *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000). "Failure to alternatively request a continuance upon moving to exclude evidence … constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order." *Id.* Although there was no burden upon Shoaff to seek court ordered compliance with Dekker's affirmative discovery duties, the fact that he did not is relevant to our decision. *Lucas*, 609 N.E.2d at 1196.

When Dekker failed to disclose Dr. Talarico's opinions and conclusions on December 16, 2011, Shoaff did not seek court ordered compliance with Trial Rule 26(E). Instead, Shoaff cancelled his deposition of Dr. Talarico[1] and seemingly ignored Dekker's discovery violation for nearly two years. It was not until the final pretrial conference that Shoaff moved to bar Dr. Talarico from testifying, and in so moving, Shoaff did not alternatively request a continuance in order to depose Dr. Talarico. It was not until trial, when Dr. Talarico was called to testify and Shoaff renewed his motion to bar Dr. Talarico's

---

[1] Despite its inadequacy under Trial Rule 26(E), we believe the information provided in Dekker's supplemental response to Shoaff's expert witness interrogatories could have facilitated a productive deposition of Dr. Talarico.

testimony, that Shoaff requested an opportunity to question Dr. Talarico outside the presence of the jury. Given Shoaff's lack of diligence in seeking appropriate relief, we cannot say that Shoaff suffered unfair surprise as a result of Dekker's discovery violation.

## II. Jury Instruction

Shoaff argues that the trial court abused its discretion in instructing the jury that "[a] person is entitled to full function of their body and any loss of function in itself is compensable because of the effect on the quality and enjoyment of life which would not have been restricted but for the injury."[2] Tr. p. 240. In reviewing a trial court's decision to give or refuse a tendered jury instruction, "we consider whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions." *Estate of Dyer v. Doyle*, 870 N.E.2d, 573 581-82 (citing *Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893 (Ind. 2002)).

Shoaff claims only that the instruction is not supported by the evidence. In support of this claim, Shoaff asserts Dr. Robinson's testimony that Dekker has "full mobility," "full strength," and "full function of the knee," Tr. p. 113-14, as well as Dr. Thoma's testimony that Dekker's injury does not "prevent function" of her knee. Tr. p. 130. The record, however, also reveals that the fatty tissue beneath Dekker's kneecap is dead. This "fat pad" has been replaced by scar tissue and no longer cushions and lubricates certain bones as they

---

[2] In his reply brief, Shoaff set out verbatim his objection to this jury instruction. We remind counsel of Indiana Appellate Rule 46(A)(8)(e), which states, "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." "These requirements are more than a mere formality," and failure to comply with them "generally results in waiver of the issue." *Reed v. State*, 702 N.E.2d 685, 690 (Ind. 1998).

move across one another during Dekker's daily activities. Tr. p. 186. Dekker's condition is permanent and, according to Dr. Thoma, Dekker risks persistent pain "and any attendant misfunction that she experiences with that." Tr. p. 128. To that end, Dekker testified that she has trouble walking, kneeling, driving, climbing stairs, and crossing her legs. Because this evidence supports the trial court's decision to instruct the jury regarding loss of full function of the body, we conclude that giving the instruction was not an abuse of discretion.

### III. Closing Argument

Shoaff argues that the trial court abused its discretion in permitting Dekker to make a "Golden Rule" argument during closing argument. "A 'Golden Rule' appeal in which the jury is asked to put itself in the plaintiff's position 'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982) (quoting *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978), *rev. on other grounds*, *cert. denied*), *aff'd*, 465 U.S. 752 (1984); *see Johnson v. State*, 453 N.E.2d 365, 369 (Ind. Ct. App. 1983) ("It is misconduct to phrase final argument in a manner calculated to inflame the passions or prejudices of the jury."); *see also Faulk v. Chandler*, 408 N.E.2d 584, 586 (Ind. Ct. App. 1980).

Shoaff claims Dekker asked the jury to put itself in her position when her counsel made the following comments during closing argument:

> Within the context of this particular case, let's find out how much 500,000 is. Let's imagine for a moment that I approach Denisa. I approach her on the street and hand her a check for $500,000.00, and she looks at me with

8

surprise and suspicion, and she says to me, "What's the catch," because she knows nothing in this life comes for free.  And I say, "I'm going to hand you this check for 500,000, but before it becomes yours I'm going to tell you what you have to do."
***
"You're going to have to get in your car, go on 80-94, go 55 miles an hour, get hit when a car bounces off the median.  You're going to have to get knocked out, and when you come to, you're going to have think your car is burning.  You're going to have to be scared as heck and get out of that car, and by the grace of God, there's a nurse at the scene who comes and helps you walk to the side of the road, and you crumble down, and there's trucks and cars going by, and she takes you to safety.  Then you can't see because blood is coming into your eyes, and you're just waiting.

The ambulance comes and they strap you down, put you in the ambulance, put a brace on you and slow down the bleeding.  You'll hear sirens and a lot of commotion, and you get a chance to glimpse at the wreck.  And then it crosses your mind that when you passed the accident scene, when heard sirens you said a little prayer for the person who was in that vehicle.  But now that person is you.  At the emergency room they cut your pants, look at your knee, suture up your wounds.

You go home, you need help to go to the bathroom, can't move.  You're afraid of losing your job, so what you do is you go to work, you put your foot up on the pillow and you try to do your work.  You try to get ready for your wedding six or seven weeks later.

You're hurting from head to toe, so five days later you go back to the emergency room complaining of pain.  They tell you it's going to take some time.

You go to a doctor.  He says it will take a year, maybe better, to get this resolved. You go back to the doctor to take out the stitches.  So you wait, and you wait, and after the passage of a year, things get a little better but they don't heal.  So you go to Dr. Thoma, Lakeshore Bone & Joint, and he tells me - and he tells you"
***
"And he tells you that it's a mass, let's just monitor it, really, nothing could be done about it.  And then over time you know something is not right, because you feel it getting a little bit larger, and you feel a little bit more pain.  So you go back to see the orthopedic surgeon, and he does an MRI, and the MRI reveals and proves that you have a permanent injury.  You go back to the orthopedic surgeon again, because you want to know if there's anything that could be done because it's bothering the heck out of you.  He says, 'this is beyond the scope of my practice.  I fix broken bones, for the most part, deal with people with diabetes.  Go to a plastic reconstructive surgeon.'

So you go to Dr. Robinson, and your hope is that you can get

outpatient surgery. This plastic surgeon tells you there is [sic] three things that are key in this particular claim. Surgery is not recommended because the new scar tissue would build up and the pain could be the same or worse; and the surgery would take away the cushion between the skin and the bone; and if surgery were performed, there would be a risk that the mass would come back at a larger scale. And he says to you, 'We're only going to have surgery if this is debilitating'."

Tr. pp. 248-50. Shortly thereafter, Counsel for Dekker concluded:

Now, if at any point in time throughout this offer to Denisa, she would walk away at any point, then I haven't asked you for enough. But the difference between – well, the difference between that and today is she didn't have the choice to walk away on May 20, 2007.

Tr. pp. 251-52.

Dekker contends the "you" phrases used in her counsel's closing argument refer to Dekker, not the jury, and therefore, her counsel did not ask the jury to put itself in Dekker's position. Grammatically, Dekker's contention is correct. Counsel for Dekker's argument was set up as a hypothetical conversation between Dekker and her counsel in which the pronoun "you" referred to the antecedent "Dekker." Such a hypothetical, however, could still be interpreted as a Golden Rule argument, and counsel for Dekker's comments come close to, if not over, that line. But we need not decide that issue, as any impropriety in Dekker's closing argument was harmless.

"This court will reverse a judgment due to improper argument of counsel only where it appears from the entire record that the remarks from counsel were "in all probability, the basis for securing an incorrect verdict.'" *Ritter v. Stanton*, 745 N.E.2d 828, 857 (Ind. Ct. App. 2001) (quoting *Chaiken v. Eldon Emmor & Co.*, 597 N.E.2d 337, 345 (Ind. Ct. App. 1992), *trans. denied.*). That is, "[t]he jury's damage award will not be deemed the result

10

of improper considerations if the size of the award can be explained on any reasonable ground. *Id.*

The record reveals that, as a result of the motor vehicle accident, the fatty tissue beneath Dekker's kneecap is dead, having been replaced by scar tissue. Since it was first diagnosed, the mass of scar tissue in Dekker's knee has doubled in size, and continued growth is expected. This scar tissue is like "a small rock, a little piece of stone or pebble that has sharp edges," Tr. p. 187, and it causes Dekker chronic knee pain. On good days, Dekker rates her pain as a 3 or 4 on a scale of 1 to 10, and on bad days, her pain is an 8 or 9. Dekker is in pain 45% of the time and has trouble walking, bending, kneeling, driving, climbing stairs, and crossing her legs. Her condition is permanent, and she is expected to live for another fifty years. These facts reasonably explain an award of $386,000.00, and therefore, we cannot say that the basis for Dekker's award was the comments of her counsel during closing argument. *Ritter*, 745 N.E.2d at 857.

The judgment of the trial court is affirmed.

BARNES, J., and BROWN, J., concur.