P.T. BUNTIN, M.D., P.C.,
Appellant–Defendant,

v.

Rose Marie BECKER, as Administratrix of the Estate of Hollis V. Becker, Deceased, Appellee–Plaintiff.

No. 49A05–9904–CV–170.

Court of Appeals of Indiana.

April 26, 2000.

Robert J. Shula, Jon K. Stowell, Lowe, Gray, Steele & Darko, LLP, Indianapolis, Indiana, Attorneys for Appellant.

James H. Young, Young & Young, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

P.T. Buntin, M.D., P.C. ("Buntin") appeals from the trial court's judgment in favor of Rose Marie Becker, as administratrix of the Estate of Hollis V. Becker ("Becker") on her complaint for medical malpractice. We affirm.

### Issues

Buntin raises two issues for our review, which we restate as follows:

1. Whether the trial court properly ordered a defense expert witness' deposition testimony limited to the subject matter and opinions disclosed to Becker during discovery; and

2. Whether the trial court properly ordered disclosure of certain material reviewed by a defense expert in preparation for his deposition.

### Facts and Procedural History

Buntin performed a colon resection surgery on Mr. Becker on May 1, 1989. Mr. Becker died from post-operative complications on May 18, 1989. Becker filed a lawsuit against Buntin alleging malpractice in his care and treatment of Mr. Becker which proximately caused his death. The case was tried to the court in February 1999, and the trial court entered a judgment in favor of Becker in the amount of $500,000 in March 1999. Additional facts will be provided as necessary for the discussion of each issue below.

### Discussion and Decision
### Pre–Trial Discovery Rulings

Buntin contends that the trial court erred in two pre-trial discovery rulings which resulted in prejudice to him.

#### I. Standard of Review

 A trial court is accorded broad discretion in ruling on issues of discovery, and an appellate court will interfere only when the appealing party can show an abuse of that discretion. *Vernon v. Kroger Co.*, 712 N.E.2d 976, 982 (Ind.1999). We review the trial court's decision in view of the facts and circumstances surrounding the decision. *Johnson v. Blankenship,* 679 N.E.2d 505, 508 (Ind.Ct.App.1997), *aff'd,* 688 N.E.2d 1250 (Ind.1997). We will only reverse the trial court's ruling as an abuse of discretion if it is clearly against the logic and facts before the court. *Andreatta v. Hunley,* 714 N.E.2d 1154, 1159 (Ind.Ct. App.1999), *trans. denied.* Because the scope of discovery is highly dependent on the facts of each case, the fact-sensitive nature of discovery issues requires a high degree of deference to the decision of the trial court. *Id.*

#### II. Limiting Deposition Testimony

In February 1997, Becker submitted interrogatories and a request for production to Buntin. One of the interrogatories asked:

> Please completely identify each person you intend to call as an expert witness at trial including the defendant and state as to each person:
>
> a. Name, occupation, and address;
>
> b. The subject matter on which the person is expected to testify;

c. The substance of the facts and opinions to which the person is expected to testify;

d. The specific data on which the person bases his opinions; and

e. The qualifications that make the person an expert.

Supp. R. 2. Following the interrogatories was this paragraph:

The foregoing interrogatories are to be regarded as continuing, and you are requested to provide, by way of supplementary answers thereto, such additional information as may hereafter be obtained by you or your counsel or any person on your behalf, which will augment or otherwise modify any answers now given to the foregoing interrogatories. Such supplementary responses are to be filed and served upon the Plaintiff within (15) days after receipt of such information, but not later than the time for trial.

Supp. R. 4.

In June 1997, Buntin answered the above interrogatory as follows: "Please refer to report of Ronald Lee Nichols, M.D., which has been previously provided to Plaintiff." R. 167. The report concludes that

[t]he postoperative complications including the anastomotic leak with intraabdominal infection and evidence of multiple organ failure, in addition to the acute adrenal hemorrhages were the cause for [Mr. Becker's] demise.... I feel that Dr. Buntin's care in all aspects conformed to the standard of care of general surgeons nationally. The postoperative complications suffered by the patient were not related to this care.

R. 171. Buntin's answer to this interrogatory was never amended or supplemented.

A deposition of Dr. Nichols was scheduled in October 1998 by Buntin to be videotaped for use at trial. Four days prior to the scheduled deposition, Becker filed a motion to limit Dr. Nichols' deposition testimony to the area of his report only, that being "the development of adrenal hemorrhages and its relationship to the post-operative use of low dose heparin and the care and treatment rendered by [Buntin]." R. 163–64. Buntin filed no response to this motion, although both parties were heard on this issue during a conference call with the trial judge. The trial court subsequently ordered that the "Ronald Lee Nichols, M.D. deposition examination is to be limited to the issue of adrenal hemorrhage and its relationship to the demise of [Mr. Becker]." R. 188. As a result, Dr. Nichols' deposition was never taken. Buntin did not seek thereafter to supplement his interrogatory answers, nor did he seek reconsideration of the trial court's ruling on this matter. Dr. Nichols did not testify at the trial, although counsel made an offer to prove and proffered an amended report from Dr. Nichols.

Buntin contends that it was error for the trial court to so limit the deposition testimony of Dr. Nichols and that said error prejudiced his defense by denying him the opportunity to present expert testimony on the issue of his compliance with the standard of care in treating Mr. Becker. Buntin alleges that "[t]he fact that Mrs. Becker failed to seek an order from the trial court to require Dr. Buntin to supplement his expert interrogatory response is a relevant consideration[,]" as is "the fact that Mrs. Becker never requested from Dr. Buntin a supplementation of the expert interrogatory answer identifying Dr. Nichols and providing a copy of his report." Brief of Appellant at 10–11. Moreover, Buntin contends that his duty to supplement his interrogatory answers should center upon compliance with multiple pretrial orders and the agreed case management plan, none of which address supplementation.

### A. Duty to Supplement

■ Indiana Trial Rule 26(E) requires supplementation of discovery responses after the initial response. This duty to supplement is absolute and is not predicated upon a court order. *Lucas v.*

*Dorsey Corp.,* 609 N.E.2d 1191, 1196 (Ind. Ct.App.1993), *trans. denied.* If a party fails to conform to the requirements of T.R. 26(E) and does not supplement discovery responses concerning experts to be utilized at trial, the trial court can in its discretion, exclude the testimony of the witness. *Id.* at 1196–97.

Buntin argues that Trial Rule 26(E) is not applicable to this case because the court entered a pretrial order which did not require supplementation of his interrogatory answers, citing *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175 (Ind. 1993). *McCullough* acknowledged that "the pre-trial order, once entered, controls, and any required disclosure revolves around interpretation of and compliance with the pre-trial order." *Id.* at 180. However, *McCullough* is clearly distinguishable from the present case.

In *McCullough,* the plaintiff answered interrogatories seeking the identity of persons with knowledge of her claim, expert witnesses, and any person with whom she or her attorneys had consulted in preparation for trial, by responding that she had not yet determined what experts she would call at trial, but named James Taylor in response to the other interrogatories. A pre-trial order subsequently entered required the parties to file and exchange witness lists. The pre-trial order also stated that "pursuant to Indiana Trial Rule 16, this Order ... shall control these proceedings, constitute the pre-trial order, and be strictly enforced by the court." *Id.* at 177. McCullough filed a witness list indicating that James Taylor would be a witness, and subsequently filed an additional witness list adding "all witnesses necessary for rebuttal" without identifying them by name. After depositions of the parties' named expert witnesses were taken, McCullough contacted James Sobek. Sobek was called as an expert witness on rebuttal. The trial court refused to allow Sobek to testify.

Thus, the issue facing the supreme court in *McCullough* was nondisclosure of a known and anticipated expert witness. Although the court agreed with McCullough that Trial Rule 26 did not mandate supplementation of her interrogatory responses because the entry of a pre-trial order pursuant to Trial Rule 16 superseded the Trial Rule 26 requirements, the court held that the pre-trial order itself was nonetheless sufficient to require McCullough to supplement her witness list to include Sobek once he became known to her. *Id.* at 180. The court stated:

> Clearly, had no pre-trial order been entered here, Indiana Trial Rule 26(E)(1) would have required McCullough to supplement her responses.... Here, the pre-trial order does not address supplementation of answers to interrogatories and *defendants made no request for supplementation after the pre-trial order was entered.*

*Id.* (emphasis added).

■ Here, three pre-trial orders were entered prior to the interrogatories and request for supplementary answers being propounded to Buntin, none of which specifically stated that they were to control the proceedings thereafter pursuant to Trial Rule 16 and none of which dealt in any specific way with discovery. *See* R. 83 (order entered April 23, 1996, requiring all discovery to be completed by the June 24, 1996, pre-trial conference), R. 102 (order entered following the June 24, 1996, pre-trial conference, requiring all discovery to be completed by March 11, 1997), and R. 115 (order entered January 24, 1997, requiring witness and exhibit lists to be exchanged and filed with the court by August 25, 1997 and further ordering that any prior orders regarding discovery cutoff dates are not changed). To the extent any of these pre-trial orders could be considered a Trial Rule 16 pre-trial order, they do not control the issue of supplementation because they pre-dated the interrogatories which specifically requested supplementation of answers.

The only pre-trial order entered *after* the interrogatories were propounded to and answered by Buntin was the agreed case management order approved by the trial judge in February 1998 which dealt only with the agreed waiver of a jury trial, the anticipated length of the trial, a request that the court set the trial for mid-June 1998, and an agreement to exchange final witness lists sixty days prior to trial. R. 136–37. Trial was in fact set for June 17, 1998, but was subsequently continued. The only mention of discovery was the agreement regarding witness lists. At the time the February 1998 order was entered, Buntin had already been under a duty to supplement his interrogatory answers for better than six months, and the case had been pending for two and a half years. Because the pretrial order was entered relatively close to the anticipated trial date, the purpose was not to cover the entire course of proceedings leading up to trial, including discovery, but rather to finalize certain issues for the trial. Thus, the pre-trial order does not control Buntin's obligation to supplement his interrogatory answers pursuant to the specific request contained therein. Buntin had a duty to supplement his interrogatory responses pertaining to any experts he intended to call as witnesses at trial. T.R. 26(E); *Lucas,* 609 N.E.2d at 1196.

## B. Prejudice to Buntin

Dr. Nichols' amended report, which was proffered to the trial court as part of Buntin's offer to prove, was dated October 13, 1998. Even if we were to assume that Buntin had no reason to supplement his answers prior to Becker's motion to limit Dr. Nichols' deposition testimony, he did not seek to amend them thereafter, nor did he seek the trial court's reconsideration, nor call Dr. Nichols' as a witness at trial. He claims that he was prejudiced by the trial court's ruling which denied him "the opportunity to test and challenge Mrs. Becker's expert testimony." Brief of Appellant at 12. However, Buntin himself did nothing to procure the opportunity to present Dr. Nichols as an expert witness.

Moreover, he presented the expert testimony of six other witnesses, including himself, regarding his post-operative care of Mr. Becker. He has not shown this court that Dr. Nichols' testimony would have differed in any appreciable way from the testimony of those experts. We cannot say that the trial court's decision to limit the deposition testimony of Dr. Nichols was clearly against the logic and effect of the facts and circumstances before it, and Buntin's failure to follow through with the deposition or to call Dr. Nichols as a witness deprived the trial court of the opportunity to reconsider its ruling. Therefore, we conclude that no abuse of discretion occurred.

## III. Disclosure of Documents

On January 25, 1999, Becker took the deposition of defense witness, Jerremy Ramp, M.D. Dr. Ramp shared office space with Buntin, and the two covered each other's patients. Dr. Ramp brought with him to the deposition Buntin's office chart regarding Mr. Becker and Mr. Becker's hospital chart, materials that he had reviewed in preparation for the deposition. During the deposition, Becker's counsel asked to see those materials. Buntin's counsel reviewed the materials first, and removed "a deposition summary that was prepared by our office, communications between our office, Medical Protective and Dr. Buntin, and notes of a meeting that he took where he was meeting with Bob Shula in our office. There is also in addition to the chart material it looks like a deposition of [Becker's expert witness] Dr. Kirchner with some notations that Dr. Buntin apparently made." R. 211.

Becker's counsel asked Dr. Ramp whether he had reviewed those materials in preparing for the deposition, to which Dr. Ramp replied, "I sort of breezed through them. Some of it didn't – I didn't understand the context of some of this." R. 211. Becker's counsel then asked, "And the materials that were removed ...

[t]hose were, when you came, were in the file and were part of the materials that you looked over to prepare for this deposition?" Dr. Ramp responded, "That's correct." R. 212. Dr. Ramp was not a party to this lawsuit, nor did Buntin's attorneys represent him in any capacity regarding this lawsuit. R. 212.

Becker's counsel requested copies of the materials removed from the file Dr. Ramp had reviewed. R. 229. Buntin then filed for a protective order against "production of documents which are protected by attorney-client privilege." R. 203. The trial court denied the motion for protective order and found that the materials were discoverable. R. 276. The disputed documents were never provided to the trial court, nor are they included in the record of this cause.

Buntin contends that the trial court erred in ordering disclosure of documents protected by attorney-client privilege and "inadvertently" disclosed to a third party. In support of his argument, Buntin cites a case from the Eighth Circuit Court of Appeals which summarizes the three approaches taken by the state and federal courts when confronted with inadvertent disclosure of protected information. *Gray v. Bicknell*, 86 F.3d 1472 (8th Cir.1996). Buntin urges us to hold that mere inadvertent disclosure is insufficient to waive the privilege.

### A. Attorney–Client Privilege

■■■■ The source of the attorney-client privilege in Indiana is found in Indiana Code section 34–46–3–1, which provides as follows: "Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." The attorney-client privilege protects against judicially compelled disclosure of confidential information regardless of whether the information is to be disclosed by way of testimony or by court-ordered compliance with a discovery request which a party has attempted to resist. The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself. *Hartford Fin. Servs. Group, Inc. v. Lake County Park and Recreation Bd.*, 717 N.E.2d 1232, 1235 (Ind.Ct.App.1999).

■■■■ The burden to prove the applicability of the privilege is on the one who asserts it. *Owens v. Best Beers of Bloomington, Inc.*, 648 N.E.2d 699, 702 (Ind.Ct. App.1995). The applicability of the privilege must be established as to each question asked or document sought. *Id.* The essential prerequisites to invocation of the privilege are to establish by a preponderance of the evidence: 1) the existence of an attorney-client relationship; and 2) that a confidential communication was involved. *Mayberry v. State*, 670 N.E.2d 1262, 1266 (Ind.1996). Information subject to the attorney-client privilege retains its privileged character until the client has consented to its disclosure. *Id.* at 1267; *Key v. State*, 235 Ind. 172, 175, 132 N.E.2d 143, 145 (1956). The privilege belongs to the client and can only be waived by conduct attributable to the client. *Mayberry*, 670 N.E.2d at 1267 n. 5. *See also* Ind. Evidence Rule 501 ("A person with a privilege against disclosure waives the privilege if the person or person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter.").

### B. Disclosure to a Third–Party

■■■■ Another panel of this court recently addressed a similar issue to the one we face herein: "whether the inadvertent disclosure of documents privileged as attorney-client communications waived [the client's] right to invoke the privilege when the documents were later requested to be produced." *JWP Zack, Inc. v. Hoosier Energy Rural Elec. Coop., Inc.*, 709 N.E.2d 336, 341 (Ind.Ct.App.1999). The court noted the three approaches into

which federal and state cases may be divided on this issue: 1) the "objective" approach, which concludes that inadvertent disclosure forfeits the protection of the privilege without regard to the particular circumstances; 2) the "subjective" approach, which concludes that the privilege if forfeited only if the disclosure was intentional; and 3) the "balancing" approach, which examines several factors in determining whether the privilege is forfeited. *Id.* See also *Gray v. Bicknell,* 86 F.3d 1472 (8th Cir.1996). The factors to be considered in the balancing approach include

> "the reasonableness of the precautions to prevent inadvertent disclosure, the time taken to rectify the error, the scope of discovery," the extent of the disclosure, and "an overreaching issue of fairness and the protection of an appropriate privilege which, of course, must be judged against the care or negligence with which the privilege is guarded with care and diligence or negligence and indifference."

*JWP Zack,* 709 N.E.2d at 342 (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y.1985)).

In *JWP Zack,* the Hoosier's counsel produced for inspection and copying to the Zack's counsel several boxes of documents at their headquarters. While Zack's counsel was examining the documents, Hoosier's counsel came to him and asked whether he had reviewed certain documents which Hoosier had come to realize were privileged. Zack's counsel replied that he had reviewed the documents and that he would mark them for copying and production. Hoosier's counsel responded that the documents were privileged and that Hoosier would file a motion for protective order. Zack's counsel then filed a motion to compel production of the documents, asserting that the inadvertent production of the documents waived the privilege. The trial court denied the motion to compel, and Zack appealed. 709 N.E.2d at

341. This court adopted the balancing approach previously described, noted that the trial court had considered several relevant factors in denying the motion to compel, and held that it was not an abuse of discretion to so deny the motion. *Id.* at 342–43.

■ We, too, believe the balancing approach to be the best of the three approaches in that it allows for fair consideration of the circumstances attendant to the disclosure without placing an onerous burden on the holder of the privilege (as the objective approach does) or encouraging carelessness (as the subjective approach could). Although in this case, the trial court did not make findings of fact in denying Buntin's motion for protective order, and thus, we do not know whether the trial court engaged in such a balancing test, we do so now. Here, it was Buntin himself, the holder of the privilege, who placed allegedly confidential documents into a file at his shared office which was not accessible by him alone. These documents were reviewed, however briefly, by Buntin's officemate in preparation for his deposition testimony. In this regard, we see a major distinction between *Zack* and this case: in *Zack,* the documents for which privilege was claimed were mistakenly included in a large number of documents provided to opposing counsel in discovery; here, the documents were affirmatively placed in materials provided to an expert witness for his use in preparing for a deposition. The manner in which Buntin protected, or more accurately, failed to protect, these documents and the person to whom they were disclosed indicates to us that he has waived the privilege. The trial court did not abuse its discretion in denying Buntin's motion for protective order and ordering that the documents be disclosed.

### Conclusion

The trial court did not abuse its discretion in ordering the deposition testimony of Buntin's expert witness to be limited to

the subject matter previously disclosed to Becker, nor did it abuse its discretion in ordering disclosure of documents for which the attorney-client privilege had been waived by Buntin's conduct. Accordingly, the judgment of the trial court in favor of Becker is affirmed.

Affirmed.

BROOK, J., and NAJAM, J., concur.