OUTBACK STEAKHOUSE OF FLORI-
DA, INC., Toncredi, Inc. and John
Broz, d/b/a Outback Steakhouse of
Muncie, Appellants–Defendants,

v.

David D. MARKLEY and Lisa
K. Markley, Appellees–
Plaintiffs.

No. 18A04–0401–CV–13.

Court of Appeals of Indiana.

July 25, 2005.

Rehearing Denied Sept. 29, 2005.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale, LLP, Indianapolis, for Appellants.

P. Gregory Cross, Cross Law Firm, Michael J. Alexander, Alexander Law Firm, Donald K. McClellan, McClellan, McClellan & Arnold, Muncie, for Appellees.

## OPINION

MAY, Judge.

Outback Steakhouse appeals a judgment against it in a personal injury action brought by David and Lisa Markley. The Markleys were injured in an automobile collision with William Whitaker, who had been served alcohol at Outback.[1] Outback raises seven issues on appeal, which we consolidate and restate as:

1. Whether a new trial is required based on the Markleys' failure in an interrogatory to disclose a witness' prior statement that Whitaker was intoxicated when Outback served him, or to inform Outback when that witness indicated she would recant her deposition testimony to the contrary;

2. Whether the trial court improperly declined to give an instruction on nonparty fault Outback tendered;

3. Whether the trial court improperly limited Outback's impeachment of one of the Markleys' witnesses when the witness had, before trial, admitted he was guilty of wire fraud but the Markleys' counsel did not disclose that information to Outback or the court;

4. Whether the jury's award was artificially inflated due to the Markleys' reference in closing argument to punitive damages after the Markleys had agreed to drop their punitive damages claim and their failure to disclose a witness who would testify about special damages the Markleys suffered.[2]

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 21, 1997, the motorcycle the Markleys were riding was hit by a car driven by Whitaker. The Markleys were both seriously injured. David suffered a broken leg and ankle and an injury to his foot. He was unable to continue working as a millwright. Lisa's injuries were more serious. She had internal injuries, a fractured tibia and pelvis, and extensive damage to the urogenital and rectal area. She required numerous surgeries and was unable after the accident to have sexual intercourse or bear children.

Whitaker left the scene. Earlier that evening Whitaker had attended the opening of an Outback restaurant in Muncie where he had drinks. There was conflicting testimony as to his level of intoxication when he left Outback. Whitaker then proceeded to a bar called Van's, where he had more drinks. There was conflicting testimony as to whether the drinks he consumed at Van's contained alcohol. Whitaker left Van's between 10:30 and 11:00

---

1. We heard oral argument on December 20, 2004.

2. Outback does not argue the jury's verdict is excessive as compensation for the Markleys' injuries: "The issue is one of counsel's deliberate distortion of the evidence and their breach of their agreement, not the scope of the evidence of injuries that would otherwise support a large verdict." (Reply Br. of Appellants at 37.) Outback does not argue the special damages testimony was evidentiary error but asserts it instead demonstrates "the Markleys' pattern of discovery abuse from pretrial through trial." (Reply Br. of Appellants at 28 n. 15.)

p.m. and hit the Markleys on his way home.

The Markleys sued Outback in 1999, alleging Outback served alcohol to Whitaker when he was visibly intoxicated. Outback served interrogatories on the Markleys asking them to identify evidence on which they would rely on the issue of Whitaker's visible intoxication [3] and to provide the names of persons with actual knowledge on that issue. The Markleys' response included several names, but did not mention Patrice Roysdon,[4] who served drinks to Whitaker. Roysdon was a server employed by Outback, and she knew Whitaker. The response indicated the interrogatory would be supplemented as discovery proceeded.

In a post-trial deposition, Roysdon testified she told the Markleys' counsel in 1997, about a month after the accident, that she thought Whitaker was visibly intoxicated. The Markleys' counsel confirmed, both during the deposition and in a teleconference with the court during the deposition, that Roysdon had made that statement in 1997. In its motion to dismiss Outback's motion for relief from judgment, the Markleys' counsel stated Roysdon "shortly after [the accident], advised counsel for the Plaintiffs that William Whitaker was intoxicated when he was served alcohol at Outback." (Appellants' App. at 460) (emphasis in original).[5]

However, the Markleys did not identify Roysdon in their response to Outback's 1999 interrogatories asking for the names of persons on whom they would rely with knowledge of facts supporting the Markleys' allegation that the defendants provided alcoholic beverages to Whitaker with actual knowledge he was visibly intoxicated. Nor did they ever amend their discovery answers to identify Roysdon as someone who would testify Outback served Whitaker with actual knowledge he was visibly intoxicated.

In 2001, Outback's attorney located Roysdon and asked her whether she had served Whitaker when he was visibly intoxicated. She told counsel Whitaker appeared normal when he left Outback and there was no way he was intoxicated. (Appellant's App. at 682.) In her pretrial deposition she stated under oath Whitaker was not visibly intoxicated at Outback.

Outback moved for summary judgment contending there was no evidence of Outback's actual knowledge Whitaker was served when he was visibly intoxicated. The Markleys responded that Whitaker's visible intoxication could be inferred from evidence Whitaker was extremely intoxicated when he arrived at Van's. The Markleys' response did not mention Roysdon. Outback's motion was denied and trial commenced in June of 2002. That proceeding ended in a mistrial after it was

---

3. Under Ind.Code § 7.1–5–10–15.5, a person who furnishes an alcoholic beverage to a person is not liable in a civil action for damages caused by the impairment or intoxication of the person who was furnished the alcoholic beverage unless the person furnishing the alcoholic beverage had *actual knowledge* that the person to whom the alcoholic beverage was furnished was *visibly intoxicated* at the time the alcoholic beverage was furnished. (Emphasis supplied.)

4. In their brief, the Markleys spell this witness's name "Roysden." While both spellings

are found in the record, Roysdon testified the correct spelling is "Roysdon." (Appellant's App. at 605.)

5. In their brief, the Markleys state: "Outback cannot point to any evidence in support of its claim that Markleys' counsel had prior knowledge of or conspired with Roysdon concerning her change of testimony from her deposition." (Br. of Appellees at 41.) The Markleys do not mention or address the post-trial information noted above.

learned the Markleys had not disclosed a witness prior to trial. After the witness testified, a juror pointed out he knew the witness. The juror was excluded after he opined the witness was a pathological liar.

A second trial began in June of 2003. During opening statement, Outback told the jury Roysdon would testify Whitaker was not visibly intoxicated, and that no witness would be produced who could testify to the contrary. Outback had subpoenaed her, and she came to court on Thursday, June 19, 2003. Outback's counsel asked her to return the following Tuesday, as the Markleys had not yet finished presenting their case.

Roysdon contacted the Markleys' counsel after speaking with Outback's counsel and met with the Markleys' counsel the Sunday before she was scheduled to testify. She told the Markleys' counsel she planned to change her testimony. The Markleys' counsel did not inform Outback or the trial court of this, nor did the Markleys supplement their discovery responses. Roysdon appeared in court that Monday and the Markleys called her as a witness. Roysdon testified she lied when she gave her deposition in 2001 and that Whitaker was visibly intoxicated and she continued to serve him after she realized he was intoxicated. Outback was not notified the Markleys would call her to testify or that she would contradict the statements she previously made in her deposition.

The jury returned a verdict of $60 million for the Markleys. It allocated 65% of the fault to Outback and 35% to Whitaker, and the trial court accordingly entered judgment against Outback in the amount of $39 million. The trial court also ordered a transcript of Roysdon's testimony be prepared and forwarded to the prosecutor for whatever action he might deem appropriate.

Outback took post-trial depositions of Roysdon and Whitaker and moved to correct error and for relief from judgment. The trial court denied both motions. Additional facts regarding other witnesses and discovery abuse allegations will be provided where relevant below.

## DISCUSSION AND DECISION

 We employ an abuse of discretion standard when reviewing the grant or denial of an Ind. Trial Rule 60(B) motion.[6] *Gifford v. Hartford Steam Boiler Inspection and Ins. Co.,* 811 N.E.2d 853, 856 (Ind.Ct.App.2004), *trans. denied.* A trial court abuses its discretion when its judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* Because T.R. 60(B) relief is equitable in nature, the trial court must balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation. *Id.*

 Where a party establishes that an unconscionable plan or scheme was used to improperly influence the factfin-

---

**6.** The Markleys devote some five pages at the beginning of their argument explaining why the evidence presented at trial supports the jury verdict and they offer in that section the standard for our review of jury verdicts. The Markleys also chastise Outback at some length for its Statement of Facts, which they characterize as "a blatant attempt to mislead this Court, since the overwhelming weight of the evidence presented during the course of the trial below clearly vindicates the decision of the jury." (Br. of Appellees at 27–28.)

These assertions by the Markleys seem to assume Outback is arguing insufficiency of evidence. It is not. Rather, Outback argues the trial was tainted by discovery abuses, instructional error, and improper closing argument, and therefore its motions to correct error and for relief from judgment were improperly denied and a new trial is warranted.

der's decision, and such acts prevented the losing party from fully and fairly presenting its case or defense, then fraud on the court exists and Rule 60(B) relief is available. *Rocca v. Rocca*, 760 N.E.2d 677, 680 (Ind.Ct.App.2002), *trans. denied* 783 N.E.2d 697 (Ind.2002). The standard of appellate review of trial court rulings on motions to correct error is also abuse of discretion. *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1055 (Ind. 2003).

### 1. *The Markleys' Failure to Disclose Roysdon and Her Prior Statement*

 Outback's primary allegation of error is that the Markleys' failure to reveal a 1997 statement of witness Roysdon, and their failure to immediately disclose during the trial their knowledge Roysdon would recant her deposition testimony, amount to discovery misconduct that requires a new trial. We agree the Markleys' counsel should have supplemented their discovery responses to reveal Roysdon's anticipated testimony after her Sunday meeting with Counsel. However, we need not reverse on that ground because Outback has not demonstrated a different result would have been reached had the Markleys supplemented their discovery regarding Roysdon's testimony.

The Markleys did not identify Roysdon in their response to Outback's 1999 interrogatories asking for the names of persons with knowledge of facts supporting the Markleys' allegation that the defendants provided alcoholic beverages to Whitaker with actual knowledge he was visibly intoxicated.[7] Nor did they ever amend their discovery answers to identify Roysdon as someone who would testify Outback served Whitaker with actual knowledge he was visibly intoxicated. Outback asserts the Markleys compounded this discovery abuse by indicating the first time Roysdon revealed to the Markleys' counsel that she would change her story was the day before she testified at trial, when in fact the Markleys' counsel had known since 1997 that Roysdon thought Whitaker was intoxicated.

Because Roysdon's statement was concealed until her post trial deposition, Outback asserts, it was "forced to cross-examine Roysdon without knowing that the Markleys had withheld information essential to litigation of the issues and for settlement of the case." (Reply Br. of Appellants at 20.) Outback maintains it was thus deprived of its opportunity to cross-examine Roysdon about her 1997 statement or to confront Roysdon with "all of her various stories" and to show the jury she "had flip-flopped *numerous times*." (*Id.*) (emphasis supplied.) Outback asserts it would have approached settlement differently, it would not have represented to the jury in opening argument there would be no testimony as to Whitaker's "visible intoxication," and it could have more fully cross-examined Roysdon had it been aware of her 1997 statement.

---

7. The trial court found Outback was not entitled to T.R. 60(B) relief based on the Markleys' failure to identify Roysdon in response to the 1999 interrogatories, as there was no basis to conclude the Markleys intended to rely on her testimony. It noted the Markleys, in their response to Outback's motion for summary judgment, "relied solely upon the potentially tenuous indirect and circumstantial evidence present in this case, rather than the direct testimony of any witness[.]" (App. to Br. of Appellants at 44.) We acknowledge Outback's characterization as "illogical" (Br. of Appellants at 61) of the trial court's conclusion the Markleys would not rely on an eyewitness who had told their counsel in 1997 that Whitaker was visibly intoxicated. However, in light of the Markleys' subsequent reliance on circumstantial evidence, we cannot say the trial court's conclusion was clearly erroneous.

Indiana Trial Rule 26(E) requires supplementation of discovery responses after the initial response. The duty to supplement is absolute and is not predicated on a court order. *P.T. Buntin, M.D., P.C. v. Becker*, 727 N.E.2d 734, 737 (Ind.Ct.App.2000). If a party fails to conform to the requirements of T.R. 26(E) and does not supplement discovery responses the trial court may, in its discretion, exclude the testimony of the witness. *Id.* at 738. It may also grant a new trial as a remedy. *See Beauchamp v. State*, 788 N.E.2d 881, 894 (Ind.Ct.App.2003).

The trial court determined the Markleys had a continuing obligation to supplement their prior responses and they violated that obligation by failing to do so in the hours before Roysdon testified.[8] (Appellant's App. at 45.) However, it determined Outback was not entitled to relief from judgment because it did not seek to have the Markleys' counsel sanctioned, did not seek a continuance or mistrial, nor did it seek to exclude Roysdon's testimony.[9] (*Id.*) Rather, Outback chose to impeach her credibility by cross-examining her about her prior inconsistent statements.

"Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated." *Everage v. N. Ind. Pub. Serv. Co.*, 825 N.E.2d 941, 951 (Ind.Ct.App.2005) (quoting *Stamper v. Hyundai Motor Co.*, 699 N.E.2d 678, 683 (Ind.Ct.App.1998), *trans. denied* 706 N.E.2d 181 (Ind.1998)). When a defendant is confronted with a surprise witness, ordinarily the proper response is to move for a continuance. *O'Connell v. State*, 742 N.E.2d 943, 948 (Ind.2001). This remedy allows time for the opposing party to depose the witness and examine the accuracy of the proposed testimony. The failure to move for a continuance may waive any alleged error on appeal. *Id.* Similarly, Outback's failure to seek a continuance precludes it from claiming it was prejudiced by the Markleys' improper failure to supplement discovery. *See Kirtley v. McClelland*, 562 N.E.2d 27, 32 (Ind.Ct. App.1990) (appellant claimed surprise when trial court permitted appellee to proceed on theory outside the pleadings, but appellant's failure to request continuance precluded claim of prejudice), *reh'g denied, trans. denied.*

The Markleys argue Outback has not demonstrated a different result would have

---

8. The Markleys do not explicitly challenge this finding. They do question whether there is a duty to supplement as a result of information obtained after a trial has commenced, but assert that even if there is, it was "arguably unexercised by the Markleys for merely a day." (Br. of Appellees at 38.) They also assert, without explanation, that the record does not establish their breach was "anything other than a technical one of no practical significance." *Id.*

Finally, the Markleys note Roysdon's statement in her 1997 meeting with counsel was not written nor tape recorded: "Obviously, the content of the oral conversation between Markley's [sic] counsel and Patrice Roysden [sic] constitutes attorney work-product and is therefore not discoverable." (Br. of Appellees at 36.) The Markleys do not explain why the statement was attorney work product. They cite as authority *Kristoff v. Glasson*, 778 N.E.2d 465, 471 (Ind.Ct.App.2002). That decision states "In order to constitute work product, the material sought to be discovered must: (1) *consist of documents or tangible things;*" (emphasis supplied).

9. The Markleys assert Outback waived its argument concerning Roysdon's testimony because it did not object at trial to the Markleys' failure to supplement discovery. However, the error Outback alleges is not the admission of Roysdon's testimony but rather the Markleys' fraud in failing to disclose Roysdon and her 1997 statement that Whitaker was visibly intoxicated.

been reached had the Markleys supplemented their discovery regarding Roysdon's testimony, and we reluctantly agree. The jury was instructed it could consider evidence of a witness' prior inconsistent statements in determining the weight to be given that testimony, and Roysdon's testimony that Whitaker was intoxicated was consistent with other evidence properly before the jury.[10] We cannot say the trial court abused its discretion in declining to order a new trial.

▮ While we find no abuse of discretion on the part of the trial court, we must address the misconduct of the Markleys' counsel. Their failure to advise Outback's counsel that Royson intended to testify contrary to her deposition testimony was an egregious breach of their "absolute" duty to seasonably supplement their discovery response under T.R. 26. *See P.T. Buntin, M.D., P.C.*, 727 N.E.2d at 737. We find appalling the Markleys' counsel's cavalier dismissal of this breach of their duty as reflected in their suggestions their duty "was arguably unexercised by the Markleys for *merely* a day" (Br. of Appellees at 38) (emphasis supplied) and their breach might have been nothing more than "a technical one of no practical significance." (*Id.*)

The Markleys' counsel knew for some twenty-four hours that Roysdon would change her testimony. Counsel could almost certainly have contacted Outback's counsel sometime that Sunday afternoon or evening. Undoubtedly, as the parties gathered for trial on Monday morning and throughout that morning while the Markleys' counsel and Outback's counsel were in the same courtroom for trial, the Markleys' counsel could have warned Outback of what was coming. The trial rules obliged them to do so.

Outback should have had twenty-four hours to react to that new information and select a course of action. But as a result of the misconduct of the Markleys' counsel, it was forced to determine what to do, as best we can determine from the record, immediately upon hearing Roysdon's testimony. Outback's difficult decision to rely on cross-examination ultimately precluded relief from judgment on that point, and we accordingly may not reverse.

### 2. The Non–Party Fault Instruction

▮ Outback tendered, but the trial court declined to give, an instruction that provided in pertinent part:

[T]he Defendants have claimed certain specific defenses and the Defendants have the burden of proving these claims by a preponderance of the evidence. The Defendants claim that Plaintiffs' injuries and damages were caused by the fault of the non-parties, William Whitaker, and Van's bar at the airport. In addition, Defendants claim that the Plaintiffs, David and Lisa Markley, are

---

10. Whitaker testified he believed he was intoxicated while at Outback, but he did not testify he was "visibly intoxicated." The Markleys assert Whitaker "did in fact testify that the term 'intoxicated' meant to him that he was **'stumbling, knocking things over and slurring his speech.'**" (Br. of Appellees at 9) (bold type in original). The exchange on which the Markleys rely was:

Q. Is whether or not you think you're intoxicated, is that based upon how you feel?
A. Yes, sir.

Q. It's an internal recognition of your own that you've reached a point where something tells you you're probably intoxicated?
A. Yes, sir.
Q. And that doesn't mean you have to be to the point where you're stumbling, knocking over things, slurring your speech, does it?
A. Yes.
Q. It does?
A. Yes.
(Tr. at 638.)

partially at fault for the accident and their own injuries.

(App. at 376.)

The trial court did not give the instruction Outback tendered, but instead gave an instruction that provided in pertinent part:

However, the Defendants have claimed certain specific defenses and the Defendants have the burden of proving those claims by a preponderance of the evidence. The Defendants claim that Plaintiffs' injuries and damages were caused by the fault of non-parties, William Whitaker and Van's Lounge.

In order for fault to be assessed against a non-party, Van's Lounge, the Defendants have the burden of proving the following propositions by a preponderance of the evidence:

1. That Van's Lounge served William Whitaker alcohol;

2. That William Whitaker was visibly intoxicated at the time he was served alcohol;

3. That Van's Lounge had actual knowledge that William Whitaker was visibly intoxicated at the time he was served alcohol; and

4. That William Whitaker's intoxication from alcohol served to him by Van's Lounge was a proximate cause of the collision between Whitaker's car and the motorcycle being ridden by the Markleys.

(*Id.* at 378.)

In ruling on Outback's motion to correct error, the trial court stated the instruction it gave was improper: [11]

I think the Court, in the instruction, failed to draw the distinction correctly between the issue of liability and the issue of fault. And I think what I did in my instruction was to define to the jury that if they were going to find at least Van's in some way partially responsible, they would've had to have found the same elements that they would to find Outback liable. And I think the defense is correct in noting that that was an incorrect statement as a result of the 1995 amendment to the Comparative Fault Law.

(Tr. at 1932–33.) However, the court determined Outback was not entitled to a new trial because it did not object to the instruction.

■■■ We agree with the trial court. Appellate review of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection. *Clark v. Sporre,* 777 N.E.2d 1166, 1173 (Ind.Ct.App.2002). *And see* T.R. 51(C): "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We accordingly cannot reverse on the ground the instruction the trial court gave was incorrect.

■■■ The trial court also properly declined to give the instruction Outback tendered because it included Outback's claim the Markleys were partially at fault, which claim Outback had dropped before the case went to the jury. It is error for a trial court to instruct the jury on propositions of law not pertinent to the issues or applicable to the evidence. *Mullins v. Bunch,* 425 N.E.2d 164, 166 (Ind.1981). Therefore, a party who submits an instruction that, in light of the evidence, contains both appropriate and inappropriate propositions of law, is not entitled to have the

---

11. In light of our disposition of this issue, we need not address whether the instruction on nonparty defense was incorrect as to Van's Lounge.

instruction submitted to the jury. Nor is the trial court obliged to engage in redaction for the parties and submit the instruction as modified to the jury. "Rather, it is the equally long-standing rule that unless it is the duty of the court to give the instruction precisely as requested, it does not commit error by refusing to submit the instruction to the jury." *Id.* We cannot say the trial court abused its discretion when it declined to give the jury the instruction Outback tendered.

### 3. *Limitation on Witness Impeachment*

 Shortly before the first trial but after the witness designation deadline, the Markleys indicated they would offer a witness, Bruce McLaren, who had formerly been a magistrate judge in the court where the Markleys' lawsuit was being tried. Outback moved to exclude his testimony because of the late disclosure and because he was a judge of the court where he was to testify. The trial court denied Outback's motion.

As the second trial approached, McLaren was charged by the U.S. Attorney with numerous counts of wire fraud. He was represented in that action by one of the Markleys' attorneys. The Markleys' counsel asked the trial court to direct Outback not to ask McLaren about the indictment on the ground the indictment was not an impeachable event.[12] Outback objected on the ground McLaren was relying on the Markleys' counsel to represent him in a criminal matter that involved his liberty and his livelihood as a lawyer, and the jury should therefore be made aware of that information in order to determine McLaren's possible bias. The trial court precluded Outback from so cross-examining

McLaren. McLaren testified he was at the Outback grand opening and "I haven't been [sic] anything like that since I was in a fraternity." (Tr. at 942.)

After Outback filed its motion to correct error, it learned McLaren and his lawyer had, two weeks before the Markley trial, signed a plea agreement. McLaren had also signed an admission of guilt: "I am pleading guilty as set forth in this Plea Agreement because I am guilty of the crime(s)[.]" (App. at 396.) However, at the time McLaren testified, the plea agreement had not yet been accepted by the federal court. These events, Outback asserts, denied Outback its right to fully cross-examine McLaren and amounted to a fraud on the court.

 The trial judge has discretion to determine the scope of cross-examination and only a clear abuse of that discretion warrants reversal. *Carter v. State,* 505 N.E.2d 798, 800 (Ind.1987). Proof that a witness has been convicted of a crime may be admitted for the purpose of attacking that witness's credibility if the crime involves dishonesty. Ind. Evid. Rule 609(a). In *Specht v. State,* 734 N.E.2d 239, 240 (Ind.2000), our supreme court determined a guilty plea not yet reduced to judgment amounted to a "conviction" for impeachment purposes: "when there has been a plea of guilty it is a conviction of crime . . . [t]he fact that final judgment was not rendered does not alter the fact that he stands convicted of the crime to which he has entered a plea." *Id.* (*quoting McDaniel v. State,* 268 Ind. 380, 383, 375 N.E.2d 228, 230 (1978)).

The State charged Specht with confinement, and he pled guilty. The trial court accepted the plea but agreed to withhold

---

12. McLaren had by that time signed a plea agreement and an admission of guilt, but the Markleys' counsel mentioned only the indictment. They did not reveal to the court or Outback there had been in any sense an admission of guilt.

judgment until January 5, 1999. Specht's case commenced in August of 1998. Outback accordingly asserts McLaren's admission of guilt was the same as a conviction for impeachment purposes and it should be granted a new trial for what it characterizes as the Markleys' counsel's fraud on the court.

■ Any party to the plea agreement may withdraw the agreement before the court accepts it. *See, e.g., Pritscher v. State,* 675 N.E.2d 727, 733 (Ind.Ct.App. 1996).[13] Therefore, the Markleys argue, "it would have been reversible err [sic] for the Court to have allowed into evidence . . . that Bruce McLaren had entered into plea negotiations[.]" (Br. of Appellees at 48) (emphasis in original). Because McLaren's plea agreement had not yet been accepted by the district court and could presumably have been withdrawn, we cannot characterize the failure of the Markleys' counsel to reveal to the trial court the true status of McLaren's case as within the category of "most egregious circumstances involving the courts." *Rocca,* 760 N.E.2d at 680. We therefore decline to hold the acts of the Markleys' counsel amounted to a fraud on the court.

### 4. *Propriety of Jury Award*

Outback asserts the jury award against it, $39 million, was a response to the Markleys' "improper and dishonest acts in trying this case," (Br. of Appellants at 79), including: keeping from Outback the key witness Roysdon; allowing Outback to misrepresent to the jury there would be no witness to testify to Whitaker's visible intoxication, thus destroying Outback's cred-

ibility with the jury; not allowing Outback to impeach one of the witnesses the Markleys presented; allowing the Markleys to surprise Outback with testimony about special damages; and injecting into the jury's mind in closing argument that Outback deserved to be punished.[14]

■ Where a damage award is so outrageous as to indicate the jury was motivated by passion, prejudice, partiality, or consideration of improper evidence, we will find the award excessive. *Dollar Inn, Inc. v. Slone,* 695 N.E.2d 185, 190 (Ind.Ct. App.1998), *reh'g denied, trans. denied* 714 N.E.2d 165 (Ind.1999). When the evidence concerning the injury and damages is conflicting, the jury is in the best position to assess the damages and the jury's verdict cannot be said to be based on prejudice, passion, partiality or corruption or on the consideration of some improper element. *Id.* at 191.

The Markleys assert the verdict is "premised on undisputed evidence of horrendous damages," (Br. of Appellees at 63), and note such damage awards are particularly within the province of the jury because they involve the weighing of evidence and credibility of witnesses. *See, e.g., Landis v. Landis,* 664 N.E.2d 754, 757 (Ind.Ct.App.1996), *trans. denied.*

### The Markleys' Closing Argument

■ Before the case went to the jury after the second trial, the Markleys dismissed their punitive damages claim against Outback and Outback dismissed its claim of comparative fault on the part of the Markleys. However, after dismissing the punitive damages claim the Markleys'

---

13. The Markleys also assert conduct for which no charges have been filed or are pending is inadmissible for impeachment purposes. The relevance of that to the case before us is not apparent, as McLaren had been charged.

14. We note Outback did not ask the trial court to sanction the Markleys' attorneys nor did it request attorneys' fees for the Markleys' counsels' misconduct. We therefore do not address whether such sanctions would have been proper under these circumstances.

counsel stated in final argument that Outback had asserted its corporate policy "that says you won't serve intoxicated people, and then set up a program that's designed to do just that." (Tr. at 1739.) Counsel then stated "My clients don't want anyone punished. Good thing, because this is the perfect case for punitive damages on that basis alone." (*Id.*)

Outback objected and its objection was sustained. However, Markley's counsel then told the jury "We did withdraw the issue. We don't withdraw the evidence of the conduct that was going on, however, ladies and gentlemen. So you think about it." (*Id.* at 1739–40.)

Outback directs us to *CSX Transp., Inc. v. Levant*, 262 Ga. 313, 417 S.E.2d 320, 322 (1992), where the Court found it

> apparent that in addition to arguing for legitimate damages, [Levant]'s counsel informed the jury that the railroad was maintaining its tracks with an inadequate number of people and would continue to do so unless the jury made them pay; that the railroad did not care about [Levant]; that the jury should do right by [Levant] whom counsel considered to be a good man and his friend; and, that the jury should stamp out those (the corporate appellant) who would try to have the jury not give [Levant] an award of adequate damages because [Levant] is a "labor man." Inherent within [Levant]'s closing argument is the message that the big railroad needed to be punished for these transgressions.

The court accordingly reversed the verdict, finding the verdict raised an irresistible inference that an improper cause invaded the trial.

We agree with Outback's characterization of the statement by Markleys' counsel as an improper invitation to the jury to punish Outback. However, in light of the extensive damages the plaintiffs suffered and our conclusions as explained above that the various actions of the Markleys' counsel, while improper, did not amount to reversible error, we cannot find such an "irresistible inference" in the case before us and therefore cannot reach the same result as did the *CSX* court. We must accordingly decline to invade the province of the jury to determine the damage award.

### Evidence of Special Damages

■ Outback asserts discovery abuse in the Markleys' failure to disclose special damages about which Pamela Porter, their expert witness on post-traumatic stress disorder (PTSD), would testify.[15] In an interrogatory, Outback asked the Markleys to disclose all special damages they would claim. The Markleys indicated they anticipated additional surgeries or other medical procedures would be performed, but the extent or cost of the medical treatment was not known. They did not indicate they would claim damages for PTSD, nor did they update the interrogatory responses to so indicate.

Porter testified without objection that Lisa Markley would need weekly psychiatric treatment for the rest of her life to deal with depression, and she testified to the cost of the treatment. Outback did not object on the basis of the Markleys' failure to supplement discovery regarding the

---

**15.** Outback does not argue the trial court erred in allowing Porter's testimony. Rather, it asserts the Markleys' "failing to disclose critical information that was specifically requested by Outback's interrogatories, and then ambushing Outback with that undisclosed information at trial" (Reply Br. of Appellants at 30) was part of the Markleys' counsel's pattern of discovery abuse, which abuse entitled it to sanctions in the form of a new trial.

special damages until after that evidence was before the jury. It objected on that ground when the Markleys offered an exhibit summarizing the cost of Lisa's future treatment for PTSD at over 1.3 million dollars.

The court overruled the objection because no objection on that ground had been made earlier and because the interrogatory response was not "so limited as to not put the other side on notice that there would be additional expenses that were anticipated medical in nature." (Tr. at 1255.) Accordingly, we cannot say Outback was entitled to a new trial based on this failure by the Markleys to supplement their discovery responses.

## CONCLUSION

The Markleys' counsel's violation of T.R. 26 in failing to disclose witness Roysdon would change her testimony, while misconduct, does not require reversal because Outback chose to cross-examine Roysdon; the trial court's refusal to give Outback's tendered instruction on non-party fault and its limitation of Outback's impeachment of witness McLaren were not abuses of its discretion; and the jury's damage award against Outback was supported by the evidence. We must accordingly affirm.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.